MELBA JEAN CURTIS, Plaintiff-Appellant, *v.* DR. JAMES GOLDEN-STEIN *et al.,* Defendant-Appellees.

Third District   No. 3—83—0249

Opinion filed June 27, 1984.—Rehearing denied August 7, 1984.

BARRY, J., specially concurring.

John C. Ambrose, of Ambrose & Cushing, P.C., of Chicago, for appellant.

Robert W. Boyd and Richard L. Ackman, both of Ackman, Marek, Boyd & Simutis, Ltd., of Kankakee, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff underwent a hysterectomy performed by the defendants. Following surgery, there were complications which resulted in the loss of the plaintiff's left kidney. The plaintiff brought a malpractice action alleging that the defendants had damaged her left ureter during surgery, which caused kidney damage. The plaintiff also alleged that the defendants were negligent in failing to recognize the nature of the post-operative complications soon enough so as to prevent kidney damage and in failing to inform her of the nature and severity of the complications.

At the close of the plaintiff's evidence, the trial court granted the defendants' motion for a directed verdict. The motion alleged that the plaintiff had failed to establish a standard of care for obstetricians-gynecologists in performing a hysterectomy and failed to show that the defendants' conduct deviated from any standard of care.

The plaintiff argues on appeal that the court erred in granting a directed verdict because the plaintiff's evidence established a case of *res ipsa loquitur* and because there was sufficient evidence to permit the jury to decide whether the defendants were negligent in failing to recognize and treat her post-operative complications and in failing to inform her of the precise nature of those complications. The plaintiff

also contends that the court erred by refusing to grant her a continuance or permit the plaintiff to cross-examine her expert witness as a Rule 238(b) hostile witness. We affirm.

The *res ipsa loquitur* doctrine permits the trier of fact to draw an inference of negligence based upon circumstantial evidence if the plaintiff can demonstrate three things: (1) that her injury is of the kind that ordinarily does not occur in the absence of negligence; (2) the injury was caused by an agency or instrumentality within the defendants' exclusive control; and (3) the injury was not due to any voluntary act or neglect on the part of the plaintiff. (*Spidle v. Steward* (1980), 79 Ill. 2d 1.) Before a case based on this doctrine can go to the jury, the trial court must first decide, as a matter of law, whether the plaintiff's pleaded facts would ever establish the above three elements and whether those elements, as pleaded, gave sufficient notice to the defendant of the *res ipsa loquitur* cause of action. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 7.

■ The plaintiff's complaint alleges specific acts of negligence. There is nothing alleged in support of the theory that the plaintiff's injury ordinarily would not occur in the absence of negligence. There is also nothing in the complaint which gave notice to the defendants that plaintiff was relying on *res ipsa loquitur*. According to the *Spidle* case, as a matter of law, this case could not have gone to the jury based on *res ipsa loquitur*. The question then is whether the plaintiff presented sufficient evidence in support of the allegations of specific negligence to survive a motion for a directed verdict.

■ On a motion for a directed verdict, the role of the trial judge is to view all of the evidence in a light most favorable to the nonmovant and decide whether a verdict for the nonmovant could ever stand. We have examined the record and find that the plaintiff never established a medical standard of care which governed the defendants' acts.

Specifically, the plaintiff's expert testified that he had no opinion to express as to what was done by the defendants during surgery. He further stated that the defendants' procedures following the operation were what he would have done. The plaintiff totally failed to provide any standard by which the jury could measure the conduct of the defendants either during or after surgery.

We do not agree with the plaintiff's argument that the defendants' testimony was sufficient to establish a standard of care. The defendants never testified that the standard of care in performing a hysterectomy differed from the surgical techniques employed during the plaintiff's operation.

The plaintiff also points to the fact that it took six days from the onset of complications before the defendants decided to transfer the plaintiff to another hospital for corrective surgery and that the defendants told her only that she had a "bad kidney." Again, the plaintiff has failed to show whether this conduct deviated from the standard procedure in the profession.

Failure to establish a standard of care is a fatal deficiency in a malpractice action. Accordingly, no verdict in favor of the plaintiff could stand and the court properly directed a verdict for the defendants.

■ The last two issues concern the testimony of Dr. Henry Wolfe, the plaintiff's expert witness. As a sanction for failure to comply with discovery orders and appear at pretrial conferences, the plaintiff was limited to calling Dr. Wolfe as her sole expert witness. Prior to trial, Dr. Wolfe, on the advice of the risk manager at his hospital, informed the plaintiff that he would not discuss the case before testifying. Dr. Wolfe assured the trial judge that he would testify consistently with a deposition taken by the defendant. Fearing that he would not be able to elicit a favorable opinion from Dr. Wolfe, plaintiff's counsel moved for a continuance in order to secure a more cooperative witness. The motion was denied. The plaintiff also requested the court to declare Dr. Wolfe a Rule 238(b) hostile witness. The court refused to do so but permitted the plaintiff to renew the motion if Dr. Wolfe deviated from the content of his deposition.

A motion for a continuance, except where it is based on a statutory cause, is addressed to the discretion of the trial court. Our statutes do not authorize continuances to enable litigants to secure cooperative witnesses. Furthermore, because of the potential inconvenience to the parties, witnesses and the court, especially grave reasons for granting a continuance must be given once a case reaches the trial stage. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350.) We fail to see any need for a continuance here. The witness was available and willing to testify. Even if a continuance had been granted, the plaintiff could not have secured another witness due to the court's sanction. Under these circumstances, we cannot say that the trial judge abused his discretion in refusing to grant the plaintiff's motion.

■ The question of whether Dr. Wolfe was a Rule 238(b) hostile witness was also within the trial court's discretion. Such a determination cannot be made until the witness demonstrates hostility or uncooperativeness while testifying. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915.) Thus, the court did not err by refusing to declare Dr. Wolfe a hostile witness prior to trial. Al-

though the plaintiff was permitted to renew the motion while Dr. Wolfe was testifying, there is no indication that the plaintiff did so. In any event, the basis of plaintiff's argument on this point is that Dr. Wolfe testified that the defendants appeared to have performed properly during and after surgery. Unfavorable testimony is generally no reason for declaring a witness to be hostile or uncooperative. *Martin v. Brennan* (1977), 54 Ill. App. 3d 421.

The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE BARRY, specially concurring:

I concur in the result reached by the majority. The doctrine of *stare decisis* mandates an affirmance of the action taken by the trial court. The facts before us, however, compel me to go farther. In *Walker v. Rumer* (1978), 72 Ill. 2d 495, 502, 381 N.E.2d 689, 691-92, our supreme court recited the law of Illinois respecting the application of the *res ipsa loquitur* doctrine to medical malpractice suits.

> "Although ordinarily only ultimate facts, and not conclusions or inferences, are to be pleaded, we are of the opinion that in the pleading of a cause of action in medical malpractice cases under the doctrine of *res ipsa loquitur*, reliance on the doctrine should be alleged. (See *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 303."

As observed by the majority, plaintiff's counsel in the instant case failed to plead that *res ipsa loquitur* might be used as a substitute for expert testimony of the applicable standard of care and defendant's breach thereof. As I see it, this was the fatal flaw in the plaintiff's lawsuit. Had counsel exercised the precaution of including such notice in the pleadings, I would not hesitate to suggest a reversal of the trial court's result herein.

I find that contrary to the majority's suggestion that Dr. Wolfe's testimony failed to discuss the standard of care, the record is otherwise. Dr. Wolfe concluded that there was no deviation from the applicable standard of care here but equivocated several times throughout his testimony. For example the record contains the following colloquy:

> "PLAINTIFF'S COUNSEL: O.K., and so the standard of care would be that they do not locate it [the ureter], is that right?
> DR. WOLFE: That's right."

I find such testimony singularly unpersuasive. It is entirely obvious to me that "where a physician accidentally severs a ureter of a patient during a hysterectomy and closes the wound without exercising some technique to determine the condition of the ureters, such is not an exercise of proper care by a surgeon performing such hysterectomy, and [that] a finding by the jury that such conduct constitutes malpractice" could be sustained without expert testimony being introduced by plaintiff against the defendant physician. (See *Faulkner v. Pezeshki* (1975), 44 Ohio App. 2d 186, 196, 337 N.E.2d 158, 166 (judgment for plaintiff affirmed on grounds that issue of negligence submitted to jury on *res ipsa loquitur* doctrine was proper).) Expert testimony is, by my view, unnecessary to sustain a cause of action in negligence when a functioning vital part of the human body is "lost" during surgery without any forewarning.

Unlike Illinois, Ohio courts do not require pleading of *res ipsa loquitur* as a precondition to relying on the doctrine in malpractice suits. Because of the startling similarity of facts in the *Faulkner* case to those presently before us, the case gives me pause to seriously reconsider the justification for requiring notice of *res ipsa loquitur* in the pleadings in Illinois. Particularly incisive in the *Faulkner* opinion is the court's discussion of one public policy basis for abandoning the Illinois rule of *Walker* and its progeny:

> "Locating an expert to testify for the plaintiff in a malpractice action is known to be a very difficult task, mainly because in most cases one doctor is reluctant and unwilling to testify against another doctor. Although doctors may complain privately to each other about the incompetence of other doctors, they are extremely reluctant to air the matter publicly." (44 Ohio App. 2d 186, 193-94, 337 N.E.2d 158, 164.)

This pragmatic analysis convinces me that any rationale for perpetuating the Illinois rule is probably outmoded and tenuous, at best.

In sum, I find the granting of defendant's motion for a directed verdict a miscarriage of justice, but nonetheless consonant with the law of this State. Since this court stands in no position to reverse decisions of the Illinois Supreme Court, I am constrained to cast my vote against this appellant despite my procedural preference as expressed above.