GORDON V. LEWIS, JR., Plaintiff-Appellant, v. MARK E. JONES, Defendant-Appellee.

Third District   No. 3—86—0638

Opinion filed June 29, 1987.

Harvey & Stuckel, Chartered, of Peoria (Jeffrey B. Rock, of counsel), for appellant.

John A. Kendrick, of Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was brought by plaintiff-appellant, Gordon V. Lewis, Jr. (referred to as Donny), against defendant-appellee, Mark E. Jones (Jones), for damages resulting from an automobile accident.

Donny suffers from cerebral palsy. Although this condition does not impair his ability to think, read or remember, it does affect his speech and physical movements. The condition produces involuntary contractions of the muscles in Donny's body, causing spastic movements.

On August 13, 1982, Donny and a friend were involved in an automobile accident with Jones, in which Jones' car ran into the rear end of the vehicle Donny was driving. Donny's car was pushed forward, striking the car in front of him. The impact knocked Donny forward and he testified that his neck snapped and he jammed his wrist into the steering wheel. He also stated that he felt dizzy and thought he would get sick.

Donny was examined by emergency room physicians at Proctor Hospital in Peoria. Upon arrival, Donny testified that he had a bad headache and his neck, lower back, arm and left wrist were hurting. After X rays were taken, Donny was given medication and then went home with his parents. Donny later consulted Dr. Brooks twice within the following month for the injuries received.

On September 27, 1982, Donny was examined and placed under the care of Dr. Robert Downs, a chiropractor. Downs diagnosed a post-traumatic cervical injury resulting from hyperextension and hyperflexion. Downs thereafter saw Donny seven times in October, eight times in November, 12 times in December and eight times in January. He further received sporadic treatment from Dr. Downs until the following June of 1983.

During the time Donny saw Downs, he performed physical activity and he testified that the pain came and went. Also during this time, Donny fell down a flight of stairs while carrying a box, causing injury to his ankle. Dr. Downs opined that injuries resulting from the fall were unrelated to the prior automobile accident. At the conclusion of the treatment, however, Dr. Downs expressed the opinion that Donny suffered from no substantial disability other than the preexisting cerebral palsy.

On November 11, 1983, Donny consulted Dr. Xuan Truong, a specialist in physical medicine and rehabilitation. A physical examination

by Dr. Truong revealed tenderness over the low back, limitations in bending forward and pain on straight leg raising. Dr. Truong prescribed physical therapy. The parties differ as to the effectiveness of the therapy, but the evidence indicates that Donny's back pain improved. Dr. Truong released Donny from further inpatient treatments on April 27, 1984. Dr. Truong testified at trial that Donny's symptoms could be related to the accident in question and that the condition could be permanent.

On June 19, 1984, Donny broke his right arm when he fell down a stairway at his parents' house. Just before the fall, he felt a sudden sharp burning pain in his right leg and fell to his right side, striking his elbow. Donny was treated by Dr. Ed Smith, an orthopedic surgeon, for a fracture just above the elbow. Smith testified that people with normal balance usually do not fall regardless of muscle spasm attacks. Smith treated Donny's fractured elbow and found, at the time of the last visit, the range of motion in Donny's arm was functional. Donny then returned to St. Francis Clinic in Peoria for therapy and saw Dr. Barry Little.

Dr. Little saw Donny on July 20, 1984. Dr. Little stated that at the examination, Donny complained of significant lower back pain causing limited range of motion in his legs. Further, Donny's right arm had a wrist drop and he had limited range of motion when attempting to extend the elbow. Little testified that Donny's low back condition was secondary to the automobile accident and that the condition was aggravated by his cerebral palsy due to his distorted anatomy. There was no indication, however, that the cerebral palsy condition was aggravated as a result of the accident.

Dr. Little then referred Donny back to Dr. Truong at the Institute of Physical Medicine in Peoria for additional therapy to the right elbow. Dr. Truong testified that the fracture of the right elbow was not caused by or connected with the automobile accident, but was connected with the fall in June of 1984.

There was conflicting testimony at the trial level concerning Donny's condition before and after the automobile accident but prior to the fall of June 1984. Plaintiff asserted that prior to the automobile accident, Donny indicated that he played golf, went fishing, played softball and lived on his own, but that after the accident he was unable to do many of these activities to the same extent as prior to the accident. Defendant asserted, however, that after the accident, Donny was able to do the same things as he did before. Moreover, he often drove to a local tavern and eating establishment to socialize with his friends. Defendant also maintained, through testimony, that Donny

was not as physically able prior to the accident as the plaintiff indicated.

Following the consideration of the evidence, the jury found that defendant was negligent and therefore liable for damages suffered as a result of the automobile accident in 1982. A verdict was returned in favor of plaintiff in the amounts of $1,000 for pain and suffering and $1,597.40 as special damages for medical expenses. The special damage award reflected the cost of the initial emergency room services and the medical treatment provided by Dr. Robert Downs in the months following the accident.

Plaintiff-appellant raised three issues on appeal: (1) whether the trial court committed reversible error in failing to grant plaintiff's proposed jury instruction number 20; (2) whether a new trial should be granted on the issue of damages only because the jury's verdict with respect to damages was against the manifest weight of the evidence; and (3) whether a new trial should be granted on the issue of damages only because the damages awarded plaintiff were inadequate as a matter of law. We will consider the issues in order.

■ The proposed jury instruction submitted by the plaintiff, and denied by the trial court, represents the idea that plaintiff's prior physical condition caused the effect of the injury suffered to be more severe than it would have been had there not been such a prior condition. It reads as follows:

> "If you find that the defendant was negligent and that his negligence was a proximate cause of injury to and disability of the plaintiff, you should then find for the plaintiff, and his right to recover damages for such injuries and disability is not barred or limited in any way by the fact, if you find it to be a fact, that the plaintiff, because of a pre-existing physical condition, was affected by his injuries differently than other persons might have been."

Plaintiff readily admits that the damages being sought are not for aggravation of a preexisting condition. The testimony at trial quite clearly indicated that the prior condition of cerebral palsy had not been aggravated as a result of the injury. Instead, plaintiff argues that he is entitled to damages as a result of his cerebral palsy condition's causing the injury to be worse than it normally would be to a person without cerebral palsy.

Essentially, plaintiff is attempting to put a new twist in the law which states that a negligent defendant must take the plaintiff as he finds him. Generally, this rationale has been applied to situations where the injuries caused by the tortfeasor consist of the aggravation

of a preexisting condition. (*Chicago City Ry. Co. v. Saxby* (1904), 213 Ill. 274, 72 N.E. 755; *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391.) Indeed, the authority cited by plaintiff for his proposition dealt with situations where preexisting conditions were aggravated by the defendant's negligence. Plaintiff, however, argues that those authorities allow for the expansion of damages to situations where the prior existing condition aggravates the plaintiff's injuries. In particular, plaintiff relies on *Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 417 N.E.2d 1099, to support his position.

In *Lay*, the trial court allowed, over objection, plaintiff's damage instructions No. 13:

"Plaintiff's right to recover damages for her injuries and disability is not barred or to be limited in any way by the fact, if you find it to be a fact, that the Plaintiff's injuries and disability resulted from an aggravation of a pre-existing condition by the occurrence in question nor by reason of the fact, if you find it to be a fact, that the Plaintiff because of a pre-existing physical condition was more susceptible to injury than other persons might have been." *Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 857, 417 N.E. 2d 1099, 1100.

The court reasoned that based on *Balestri*, and under Supreme Court Rule 239(a) (87 Ill. 2d R. 239(a)), when Illinois Pattern Jury Instructions, Civil (2d ed. 1981) (IPI Civil 2d) instructions are used, that does not "automatically preclude the use of a non-IPI instruction on the same subject." (*Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 857, 417 N.E.2d 1099, 1101.) Further, the court in *Lay* held that in certain situations the IPI instructions may be inadequate, and clarification through the use of an additional instruction is appropriate.

The court next considered whether the proposed instruction was unduly argumentative or placed undue emphasis on one element of damages. Noting that "[a]ny departure from the use of pattern instructions should be carefully scrutinized" (*Lay v. Knapp* (1981), 97 Ill. App. 3d 855, 859, 417 N.E.2d 1099, 1102), the court determined that the given instruction briefly and impartially supplemented IPI Civil 2d jury instruction No. 30.03 regarding the aggravation of a preexisting condition.

■ We believe the trial court properly denied plaintiff's tendered jury instruction in the present case for three reasons. First, in Illinois, a plaintiff is entitled to damages for all injuries that are proximately caused by a defendant, even if those injuries are the result of an aggravation of a preexisting physical condition. The cases cited by plain-

tiff, however, do not support the proposition that plaintiff's proposed jury instruction finds support in Illinois law. There can be no doubt that both *Balestri* and *Lay* stand for the idea that a defendant must take the plaintiff as he found him. Certainly that principle applies here also. However, this case does not involve the aggravation of a preexisting condition as did *Balestri* and *Lay* and, therefore, we do not consider those cases persuasive.

■ Second, non-IPI jury instructions must be impartial statements of the law that are simple, brief and free from argument. (87 Ill. 2d R. 239(a).) Plaintiff claims that since a defendant must take a plaintiff as he finds him under Illinois law and since *Balestri* and *Lay* allow the use of amplification of instructions of a preexisting condition, proposed instruction No. 20 is proper. We have, however, found no statutory or case law which specifically supports the proposition of the tendered instruction. Thus we cannot say the instruction is impartial or free from argument.

Finally, we believe those plaintiff's instructions that were given by the court adequately instructed the jury with regard to compensation of plaintiff's complained-of injuries. Those instructions dealt with proximate causation and the type and amount of damages to be awarded. For instance, plaintiff's jury instruction No. 13 defined proximate cause as "a cause which, in natural or probable sequence, produced the injury complained of." Plaintiff's jury instruction No. 15 further stated in part:

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent;

Second, that the plaintiff was injured;

Third, that the negligence of the defendant was a proximate cause of the injury to the plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff ***."

Moreover, plaintiff's jury instruction No. 16 stated:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendant:

The disability resulting from the injury.

The pain and suffering experienced and reasonable [*sic*] certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment and service reasonably certain to be received in the future.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

██ We believe that the above instructions, as well as other instructions not repeated here, adequately instructed the jury concerning the amount plaintiff was entitled to recover had the jury believed that Donny's present condition was a proximate result of Jones' negligence. Therefore, it was not proper or necessary to give plaintiff's tendered instruction No. 20, as the proposition asserted therein was fully covered in other instructions. *Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162.

It appears from the record that the reason plaintiff was not awarded damages to the extent desired is that the jury simply did not consider defendant's negligence to be the proximate cause of plaintiff's current condition. Without speculating as to why the jury made this finding, we note that there was ample evidence in the record for the jury to determine that intervening causes superseded defendant's negligent act, thus relieving defendant of any liability beyond those damages incurred immediately after the accident. The jury, properly instructed about proximate causation, found that plaintiff's condition some two years after the accident was not attributable to defendant's negligence.

██ ██ Plaintiff also argues that the jury verdict as to damages was against the manifest weight of the evidence and, therefore, the damages awarded by the jury were inadequate as a matter of law. As heretofore stated, we find sufficient evidence in the record to support the jury's verdict. It is not the function of the reviewing court "to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences." (*Tennant v. Peoria & Pekin Union Ry. Co.* (1944), 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409, 412.) "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409, 412. See also *Paul Harris Furniture Co. v. Morse*

(1956), 10 Ill. 2d 28, 139 N.E.2d 275.

Since the damages awarded by the jury are reasonably supported by the evidence of record, the damages awarded are not inadequate as a matter of law.

The decision of the trial court is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.