HELEN DELORES SODERQUIST, Plaintiff-Appellee, v. ST. CHARLES MALL ASSOCIATES, LTD., *et al.*, Defendants-Appellants.

Second District No. 2—88—0154

Opinion filed December 12, 1988.

208

Wylie, Wheaton & Associates, P.C., of Wheaton (Stephen A. Rehfeldt, of counsel), for appellants.

Robert M. Foote, of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, and James Skaar, of Smith & Landmeier, of Geneva (Craig S. Mielke, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Helen Delores Soderquist brought an action in the circuit court of Kane County against defendants, St. Charles Mall, Associates, Ltd., and St. Charles Mall, Inc., for personal injuries she suffered when she slipped and fell in a puddle of water on the floor inside defendants' shopping mall. A jury returned a verdict in plaintiff's fa-

vor in the amount of $83,666 upon which the trial court entered judgment.

On appeal, defendants contend that (1) the trial court erred in limiting the testimony of defendants' expert, Dr. Martin Greenberg, to the contents of a written report prepared by the doctor; (2) the trial court erred in allowing plaintiff to examine Scott Bonine as an adverse witness; (3) the trial court erred in excluding testimony of plaintiff's treating physician regarding other causes of plaintiff's injuries; (4) the trial court erred in giving plaintiff's non-Illinois Pattern Jury Instructions (IPI) instruction on the issue of aggravation of preexisting injuries; (5) the trial court erred in permitting plaintiff to use a poster board blowup of the aggravation instruction during closing argument; (6) the trial court erred in refusing to submit to the jury defendants' special interrogatories; and (7) the jury's verdict was excessive.

The evidence showed that on August 10, 1985, plaintiff was walking through the St. Charles Mall with her husband and grandson when she slipped and fell in a puddle of water on the terrazzo floor of the shopping mall, striking her left knee as she hit the floor. The testimony of all three of these individuals showed that none of them saw any water on the floor prior to plaintiff's fall.

Moments before plaintiff's fall, Scott Bonine and Donald Stewart, who were employed by defendants as maintenance personnel at the time of plaintiff's injury, noticed the puddle of water as they were walking the mall area. At trial, Bonine was called by plaintiff as an adverse witness under Supreme Court Rule 238 (107 Ill. 2d R. 238). Defendants objected to plaintiff's calling of Bonine as an adverse witness since he no longer worked for the defendants at the time of trial. The court ruled that under Supreme Court Rule 238, plaintiff could call Bonine without treating him as an adverse witness and could ask leading questions. The court stated: "I will give latitude under 238 without designating him a hostile witness." As a result of this ruling, plaintiff asked the following leading question:

"Q. The policy [about finding puddles on floor] was, if there were two of you together and you were walking through the mall and you found a puddle, one person would stay with the puddle and the other person would go and get the mop and signs and clear it up; is that correct?

A. Right."

Later, the witness was asked:

"Q. And it was your decision to send Mr. Stewart off to get a mop and bucket and signs?

A. Yes.
Q. And it was your job to stay with the puddle?
A. Right.
Q. And you decided not to?
A. Right."

On cross-examination Bonine stated that the mall had no written policy regarding cleanup of the mall floor. Bonine agreed that common sense dictated that when a puddle was noticed it should be immediately mopped up.

Donald Stewart, testifying on defendant's behalf, stated that no set cleanup policy existed with respect to the spotting of a puddle or spill when two individuals were policing the mall area together. Stewart related that the cleanup procedure was to get the mop, bucket and signs and to return to the area as quickly as possible. If two maintenance individuals were present, sometimes one would stay by the puddle or spill. On the date of the incident in question, Stewart went to get the cleanup supplies. As he returned, Bonine met him and informed him that someone had fallen. When Stewart arrived at the area of the puddle, he saw plaintiff on the floor.

On cross-examination, Stewart was questioned regarding answers he gave during a deposition taken by plaintiff prior to trial. Stewart agreed with a statement he made at that deposition wherein he stated that his understanding of the mall's policy regarding the puddles was that Bonine should have remained at the puddle until it had been wiped up. Stewart testified at trial that this policy was not written but that it was a procedure which made common sense when two individuals were together.

James Bowie, building superintendent at the mall at the time of plaintiff's accident, and Elizabeth Murphy, general manager of the shopping mall, both testifying on defendant's behalf, stated that no written policies existed regarding the duties of the mall's maintenance crew. Both witnesses testified that the mall's policy regarding spills was to get the mop, bucket, and "wet floor" signs and to clean up the spill as quickly as possible. Murphy also testified that the mall had had problems with leaks in its roof but that to her knowledge none existed prior to the day of plaintiff's fall.

Edward Beuten, owner of Action Roofing, stated that he had repaired prior leaks inside the mall and that he was contacted to repair the roof after plaintiff's accident. Beuten testified that the leak above the area where plaintiff had fallen was about five inches in diameter, indicating that it had just recently begun leaking.

Prior to trial plaintiff had made a motion *in limine* to bar Dr.

Martin Greenberg, an orthopedic surgeon hired by the defendants to conduct an independent medical examination of plaintiff, from testifying. Counsel for plaintiff stated that the motion was based on the provisions of Supreme Court Rules 219(c) and 220. (107 Ill. 2d Rules 219(c), 220.) Counsel argued that the doctor had failed to appear for a deposition and that, as a sanction for his failure to appear, he should be barred from testifying. Additionally, counsel maintained that it was his understanding that the doctor's testimony would drastically change the proof in the case and that, therefore, without having been able to take the doctor's deposition, it would be prejudicial and unfair to the plaintiff to allow the doctor to testify at trial. Defense attorney presented a detailed explanation regarding the mix-up over the time and date of Dr. Greenberg's deposition and the reasons for his failure to appear.

The defense also explained to the court how the doctor's testimony might differ from the doctor's written report of the independent examination he had conducted of plaintiff. Prior to trial, that report had been sent to counsel for both parties, pursuant to Supreme Court Rule 215 (107 Ill. 2d R. 215). The court pointed out the problems it foresaw with the doctor's testimony. It also determined that the doctor's failure to appear for his deposition was not intentional but, rather, "an error, mistake, a blunder." The court concluded that "a blunder should not work to the disadvantage of a party" and that it was going to limit the doctor's testimony to the parameters of his written report.

At trial plaintiff's counsel renewed his motion *in limine* with respect to Dr. Greenberg when counsel learned, on the last day of trial, that Dr. Greenberg, due to emergency surgery, would be unable to testify until 3 p.m. that afternoon rather than in the morning as originally scheduled. The court asked plaintiff's counsel if he would be willing to permit the doctor's written report to be read into evidence. With a few deletions, counsel agreed. As the court had previously ruled that the doctor's testimony would be limited to the parameters of his written report and since, as plaintiff maintained, the last two paragraphs of the report were the only part of the report containing the doctor's opinion, the court concluded that it would "accomplish very little more by having the Doctor present" to testify. Counsel for the defendants did not object but did point out that although the doctor's testimony was to be limited to his report, the doctor would have been examined regarding his opinions about statements within that report. The court gave defendants' counsel permission to read the report to the jury and to explain to the jury why Dr.

Greenberg would not be present to testify.

The evidence deposition of Dr. Eugene Wittenstrom, plaintiff's treating orthopedic surgeon, was also read to the jury in lieu of his in-court appearance. Dr. Wittenstrom's deposition revealed that plaintiff had been having problems with her left leg and knee since 1952, when she was involved in an automobile accident requiring an ankle fusion, bone grafts, and insertion of metal plates. In 1963, plaintiff underwent a meniscectomy to remove cartilage from her left knee. Plaintiff first saw Dr. Wittenstrom in 1973 for treatment of pain in her left knee due to the onset of arthritis in that knee. In 1978 the doctor performed a hitibial osteotomy to correct a bowlegged deformity which had developed on the inner half of her knee joint because of the advancing arthritis. According to the doctor, the surgery was designed to alleviate an individual's pain until such time that one could undergo a complete knee replacement. In the doctor's opinion, nearly 90% to 100% of those having a hitibial osteotomy would require a knee replacement within 5 to 10 years of the time of surgery.

In 1982 and 1983 the doctor prescribed anti-inflammatory drugs. The doctor did not see plaintiff between 1983 and August 10, 1985, the date of plaintiff's accident. On that date, Dr. Wittenstrom examined plaintiff in the hospital, determining that she had fractured her left kneecap when she fell and that surgery would be necessary to get the kneecap back together again. The surgery was performed by Dr. Rodney Rieger, a partner of Dr. Wittenstrom's.

Dr. Wittenstrom testified that by September 1986 plaintiff's knee had recovered to the condition it was in prior to the accident. In the doctor's opinion the accident aggravated the arthritic condition of plaintiff's knee, and he expected the knee would get worse. When asked on cross-examination if he could say within a reasonable degree of medical or surgical certainty whether plaintiff's accident speeded up the need for a knee replacement, the doctor replied, "I think it did."

Prior to the reading of Dr. Wittenstrom's deposition into evidence, the deposition was reviewed by the court and counsel. Some questions asked by defendants on cross-examination were designed to show that plaintiff's injuries might be caused by some cause other than the accident. These questions and Dr. Wittenstrom's answers were objected to by plaintiff on the grounds of relevancy. The objections were upheld by the court, and the specific questions and answers were stricken by the court from the transcript of the evidence deposition read to the jury.

During the conference on jury instructions, plaintiff submitted

plaintiff's instruction No. 17, a non-IPI instruction on the issue of preexisting injuries. That instruction read as follows:

"If you decide for the Plaintiff on the question of liability, you may not deny or limit the Plaintiff's right to damages resulting from this occurrence because of any injury resulting from an aggravation of a pre-existing condition."

According to counsel for the plaintiff, this instruction had been approved by the Illinois Pattern Jury Instructions Committee although it had not yet been approved by the Illinois Supreme Court. Defendants objected to the instruction. The trial court ruled that the instruction would be given to the jury. Later, defendants voiced a further objection on the basis that the instruction was not an official IPI instruction and that it was argumentative.

Also over defendant's objection, the trial court permitted plaintiff's counsel to use a poster board blowup of plaintiff's instruction No. 17 during his closing argument. Defendants argued that by taking this instruction, enlarging it, and showing it to the jury, plaintiff was emphasizing the importance of one instruction over the others.

Counsel for defendants tendered two special interrogatories for submission to the jury. Special interrogatory No. 37 asked:

"Was the negligence of the defendants ST. CHARLES MALL ASSOCIATES, LTD., and ST. CHARLES MALL, INC., the proximate cause of the injury sustained by the plaintiff?"

Special interrogatory No. 38 asked:

"Were the defendants, ST. CHARLES MALL ASSOCIATES, LTD., and ST. CHARLES MALL, INC., negligent?"

Initially, the trial court agreed to tender both interrogatories to the jury. The next day plaintiff moved that the special interrogatories not be given to the jury because it would be impossible for the jury to find defendants not negligent to some percentage or to find that defendants' negligence was not the proximate cause for at least some of plaintiff's injuries. The court then refused to tender either interrogatory.

Counsel for plaintiff and defendants stipulated that plaintiff's total medical bills as a result of the accident equalled $8,666.67. The jury returned a verdict in favor of plaintiff and against the defendants in the amount of $83,666.

Defendants first contend the trial court erred in limiting the testimony of defendants' expert, Dr. Martin Greenberg, to the contents of a written report prepared by the doctor pursuant to Supreme Court Rule 215(c). (107 Ill. 2d R. 215(c).) The court's limitation occurred at a hearing on plaintiff's motion *in limine* when plaintiff

moved to bar defendants' expert, Dr. Greenberg, from testifying at trial because of his failure to appear for a deposition. Counsel for plaintiff stated that the grounds for his motion were found in Supreme Court Rules 219(c) and 220. 107 Ill. 2d Rules 219(c), 220.

■■ Supreme Court Rule 219(c) deals with sanctions that the trial court may order for a party's unreasonable refusal to comply with, among other rules, the rules of discovery. This refusal has to be "at the instance of or in collusion with" another party. The facts presented at the hearing established that Dr. Greenberg's failure to appear for his deposition was due primarily to a mix-up in scheduling for which plaintiff's counsel was partly at fault. The doctor's failure to appear was not intentional or at the instance of or in collusion with a party.

Defendants argue that Dr. Greenberg's testimony could not have been barred on the basis of Rule 220, which deals with expert witnesses. Defendants maintain that Dr. Greenberg's identity was disclosed within the applicable time limitations of subsection (b) of Rule 220. Additionally, they assert that plaintiff failed to avail herself of the opportunity to serve interrogatories on defendants, once Dr. Greenberg's identity was disclosed, to compel disclosure of the subject matter of his expected testimony. Defendants conclude that, pursuant to subsection (d) of Rule 220, Dr. Greenberg's testimony could not have, therefore, been limited in any way at trial since plaintiff did not conduct any discovery proceedings of the doctor.

However, the trial court made it clear that it was not going to treat Dr. Greenberg strictly as an expert witness because if the court treated him as an expert witness the court, under Supreme Court Rule 220, would have had to order that disclosure of Dr. Greenberg was to occur no later than 60 days before trial. (107 Ill. 2d R. 220(b).) Under these circumstances, the court would have had to disqualify Dr. Greenberg as a witness because he was not disclosed as an expert until June 18. Since both pretrial and trial had already been set for August 14, his disclosure occurred less than 60 days prior to trial. Thus, although the court could have disqualified Dr. Greenberg as a witness if it considered him an expert under Rule 220, the court chose not to do so.

The court explained at the hearing that it believed both parties were responsible for the problems surrounding Dr. Greenberg's deposition and that, therefore, his failure to appear at the appropriate time was due to "error, mistake, a blunder." The court stated that "a blunder should not work to the disadvantage of a party and I'm going to limit Dr. Greenberg to the parameters of his report

[prepared pursuant to Supreme Court Rule 215(c) (107 Ill. 2d R. 215(c))]." Plaintiff interprets this statement as supportive of her position that the court was imposing a sanction on defendants because of Dr. Greenberg's failure to give defendants his deposition. We believe, however, that the court's statement could equally have been directed to the defendants and the fact that the defendants should not have been precluded from presenting Dr. Greenberg as a witness simply because of the mix-up regarding the time for his deposition.

At any rate, it appears evident to us that in fairness to both parties the court determined that Dr. Greenberg should be allowed to testify but that his testimony should be limited to the written report he prepared and sent to both parties after examining plaintiff. That report constituted the only information that plaintiff had regarding the subject matter on which the doctor would testify. In reaching its determination the court pointed out that, based on the positions presented by both counsel at the instant hearing, it was apparent that Dr. Greenberg was not going to testify as to a "contributing cause to a pre-existing condition," and, therefore, Dr. Greenberg would be allowed to testify. His testimony, however, would be limited to the parameters of his written report. Defendants made no objection to the court's ruling. Although defendants did raise the issue of the limitations placed on Dr. Greenberg's testimony in their post-trial motion, to preserve an issue for appeal it must have been specifically raised both by timely objection and in defendants' post-trial motion. (*Von Seggren v. Smith* (1987), 151 Ill. App. 3d 813, 815.) Consequently, we are of the opinion that defendants failed to preserve this particular issue for review.

■ Despite the fact that defendants waived this issue, we note from comments by counsel for the defendants at the hearing that Dr. Greenberg's report adequately set forth the opinions which the defendants intended to pursue in that report. Supreme Court Rule 215(c) states that after the completion of the examination of a party in any action in which the physical condition of that party is in controversy, the examining physician shall prepare a written report setting out his findings, results of all tests made, his diagnosis and conclusions and deliver or mail that report to the attorney of the party requesting the examination as well as the attorney for the party examined. (107 Ill. 2d R. 215(c).) At the hearing, counsel for defendant admitted that in his written report Dr. Greenberg did state his conclusions, his diagnosis, and his findings resulting from his examination of plaintiff. When the court asked counsel if the doctor was going to say anything different or in addition to his report (when he

testified), counsel replied, "He'll just give his opinions based upon what that report is." Counsel also stated that Dr. Greenberg would not be able to give an opinion regarding whether plaintiff's patella (kneecap) fracture was related to her degenerative arthritis (mentioned in the doctor's report) and her eventual knee replacement, as any opinion would be purely speculative. That his opinion would be speculative was clearly set forth in the last paragraph of Dr. Greenberg's written report, wherein he stated:

"It is clear from her history that she had severe symptomatic degenerative arthritis prior to her fracture and it is difficult to say to what degree the patella fracture which was fixed in anatomic alignment contributed to the acceleration of her degenerative symptoms, if at all."

Under the facts and circumstances of this case, it was not error for the trial court to limit Dr. Greenberg's testimony to this written report, nor was it error for the court to subsequently decide, without any objection from defendants, to have that report read into evidence rather than delaying trial because Dr. Greenberg would not be able to testify at the time scheduled.

In any event, the defendant was not prejudiced. The evidence at trial showed that the plaintiff did not have any pain and disability before the accident; that she endured pain before, during, and after the two surgeries required to repair her fractured kneecap; that she had to undergo rehabilitation after each surgery; that her need for a knee replacement had been increased and perhaps precipitated by the injury to the kneecap; and that, as a result of the knee injury, she could no longer perform ordinary household chores, such as vacuuming or going up and down the stairs to do laundry, or pursue social activities, such as dancing and taking long walks, that she had enjoyed prior to the accident. The evidence also showed that defendants were negligent and that their negligence was a cause of plaintiff's knee injury.

■ On appeal, the question is not whether the trial was error free, but whether error occurred which prejudiced the appellant or unduly affected the outcome of the trial. (*Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747, 758-59.) In the instant case, we do not believe the defendant's case was prejudiced or unduly affected by the limitations the trial court placed on Dr. Greenberg's testimony.

Having reached this conclusion, we find it unnecessary to address plaintiff's argument that Dr. Greenberg's report should not have been admitted as evidence at trial because defendants failed to com-

ply with the requirements set forth in Supreme Court Rule 215(c). Supreme Court Rule 215(c) provides that a physician's report cannot be delivered or mailed later than 14 days before trial. 107 Ill. 2d R. 215(c).

In their second contention defendants argue that the trial court erred in allowing plaintiff to examine Scott Bonine as an adverse witness. Bonine, a witness called by the plaintiff, had been a employee of the defendants at the time of plaintiff's accident but was not in their employ at the time of trial. It is defendants' position that no reason existed for plaintiff to treat Bonine as an adverse witness under the provisions of Illinois Supreme Court Rule 238(b) (107 Ill. 2d R. 238(b)) and that the leading questions put to Bonine by plaintiff during direct examination severely prejudiced defendants' case.

■ Supreme Court Rule 238(b) provides:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination." (107 Ill. 2d R. 238(b).)

It is well settled that the determination of hostility for purposes of Supreme Court Rule 238 rests within the discretion of the court (*People v. Lilly* (1985), 139 Ill. App. 3d 275, 285-86) and that such a determination cannot be made until the witness demonstrates hostility or uncooperativeness while testifying. *Curtis v. Goldenstein* (1984), 125 Ill. App. 3d 562, 565.

■ It is evident from the record before us that the trial court erred in permitting plaintiff to examine Bonine as if under cross-examination. There had been no demonstration by Bonine that he was hostile or uncooperative. In fact, at the time plaintiff asked for and was given the court's permission for Bonine to be examined as an adverse witness, Bonine had not even begun testifying. When defendants objected to the court's ruling that Bonine could be examined as an adverse witness, the court responded:

> "Under 238, he [plaintiff's counsel] can call him [Bonine] without treatment as an adverse witness and lead him. I will give latitude under 238 without designating him a hostile witness."

We believe the court's ruling was incorrect because to give plaintiff's counsel latitude under Supreme Court Rule 238, the court had to declare Bonine a hostile witness. The court's ruling resulted in plaintiff's counsel asking the following leading question regarding defendants' policy for cleaning up puddles or spills on the mall floor:

> "Q. The policy was, if there were two of you together and you were walking through the mall and you found a puddle,

one person would stay with the puddle and the other person would go and get the mop and signs and clean it up; is that correct?

A. Right."

Defendants maintain that this question and answer severely prejudiced defendants' case.

 Although we have determined that the trial court erred in permitting plaintiff to lead Bonine's testimony, we do not believe the error, which resulted in the preceding question and answer, was prejudicial. As plaintiff points out, no reversible error occurs under Supreme Court Rule 238 where the testimony of the witness in question is fully developed by both parties (*Verdonck v. Freeding* (1977), 56 Ill. App. 3d 575, 580) or when that witness' testimony is confirmed by other witnesses. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 926.) On cross-examination by defense counsel, Bonine testified that there was no written policy regarding the cleanup of puddles and spills on the floor but that common sense dictated that it should be mopped up. Also, Donald Stewart, the maintenance man who was with Bonine when the two men discovered the puddle, confirmed at his deposition that the mall's policy was that Bonine should have remained at the puddle while Stewart fetched the mop and bucket. Although Stewart testified at trial that no written policy existed to this effect, he stated that the policy was based on common sense.

Based on all the testimony presented, we conclude the trial court did not commit reversible error in allowing Bonine to be examined by plaintiff as an adverse witness.

Defendant's third contention is that the trial court erred in excluding testimony of plaintiff's treating physician, Dr. Eugene Wittenstrom, regarding other causes of plaintiff's injury. As Dr. Wittenstrom was unable to be present at plaintiff's trial, his deposition was read into evidence. Prior to this reading, deletions were made to the deposition based on objections made by the plaintiff. Defendants maintain that the deletions to the deposition prevented the jury from considering whether the plaintiff's current physical complaints were attributable to the accident or were consistent with her medical condition prior to the accident. We do not agree, however, with this argument because many of plaintiff's questions on direct examination, which were not stricken, were similar in context to defendants' stricken questions on cross-examination and showed that some of plaintiff's current complaints were consistent with her condition prior to the accident. Further, defendants' argument that the court struck

any testimony by Dr. Wittenstrom pertaining to plaintiff's need for a knee replacement, prior to her broken kneecap, is misleading. On cross-examination, Dr. Wittenstrom testified that 90% to 100% of those having a hitibial osteotomy, which plaintiff had undergone seven years prior to the accident, would require a knee replacement.

Further, Dr. Rodney Rieger, Dr. Wittenstrom's partner and the doctor performing the 1985 surgery on plaintiff's kneecap, testified to the condition of plaintiff's knee prior to the accident. For example, on cross-examination the doctor interpreted a report of the X rays taken on the date of plaintiff's accident, explaining that the report indicated that at that time plaintiff had signs of degenerative arthritis in her knee joint as well as extensive sclerosis and spurring.

Nonetheless, other testimony presented showed that prior to the accident plaintiff was getting along well and that, according to Dr. Rieger, it took a lot of force to break plaintiff's kneecap. The evidence showed that when plaintiff slipped in the puddle of water she fell on her left knee. Dr. Rieger stated that damage to the knee joint was consistent with the type of force that would cause the break in the kneecap. Dr. Rieger also testified that, in his experience, 25% to 30% of those having a hitibial osteotomy could avoid a knee replacement. In the doctor's opinion, if plaintiff had to eventually have a knee replacement, her fall in the mall could be the cause of that replacement.

Contrary to defendants' contention here, the jury heard evidence at trial regarding both plaintiff's present physical complaints as well as prior complaints, and the striking of certain portions of defendants' cross-examination of Dr. Wittenstrom dealing with plaintiff's prior physical condition was not error.

■ Moreover, Illinois courts have long recognized that there may be more than one proximate cause of injury (*Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 509) and that a tortfeasor is liable for the injuries he causes, even though the injuries consist of the aggravation of a preexisting condition. (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 455.) Here, both Dr. Wittenstrom and Dr. Rieger testified that plaintiff's fall at the mall was "a cause" of her complaints and disability, and, therefore, it was not improper for the court to exclude, as irrelevant, the evidence of other possible causes of which defendants complain.

■ Next, defendants argue that the trial court erred in giving plaintiff's non-IPI instruction on the issue of aggravation of preexisting injuries. The instruction in question, plaintiff's instruction No. 17, read as follows:

"If you decide for the Plaintiff on the question of liability, you may not deny or limit the Plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition."

Defendants objected to the instruction on the grounds that it was a non-IPI instruction and that it was argumentative. Counsel for plaintiff pointed out that the instruction was not a non-IPI instruction but, rather, constituted an instruction which had been approved by the Illinois Pattern Jury Instructions Committee although it had not yet been approved by the Illinois Supreme Court. Instructions which have not yet attained official status have been deemed sufficient to give to the jury. *People v. Born* (1987), 156 Ill. App. 3d 584, 595.

▪■ ■ Nevertheless, even if plaintiff's instruction No. 17 was not an IPI instruction, a trial court has considerable discretion in determining which issues have been raised by the trial evidence and in determining the form in which a jury instruction shall be given. (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 854.) When Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (IPI Civil 2d), are used, that does not " 'automatically preclude the use of a non-IPI instruction on the same subject.' " (*Lewis v. Jones* (1987), 157 Ill. App. 3d 327, 331, quoting *Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 857.) Here, instruction No. 17 briefly and impartially supplemented IPI Civil 2d No. 30.03, a very general instruction regarding the aggravation of a preexisting condition.

Moreover, the giving of instruction No. 17 did not constitute reversible error because the instruction was supported by the evidence. (*Yedor v. Centre Properties, Inc.* (1988), 173 Ill. App. 3d 132, 146.) Testimony showed that the puddle of water was not noticeable on the shiny tile mall floor; that the puddle was caused by a leak in defendants' roof; that two of defendants' employees had noticed the puddle, but neither had remained at the location of the puddle to warn patrons as was the common, although unwritten, practice among the employees when two of them together discovered a puddle or spill; that very shortly after discovery of the puddle by the employees, plaintiff stepped in the puddle, slipped, and fell on her left knee; and that injury to her knee was in part due to aggravation of a preexisting condition. As a tortfeasor is liable for all injuries he causes, even though those injuries are the result of an aggravation of a preexisting condition, (*Balestri*, 76 Ill. 2d at 455; *Lewis*, 157 Ill. App. 3d at 331), the trial court did not abuse its discretion in giving the plaintiff's instruction No. 17.

■■■ Furthermore, defendants' objection to the instruction did not comply with the requirement of Supreme Court Rule 239(b) that objections by counsel to any instruction presented at the conference on instructions must be set forth with such specificity that the trial court can be advised of the specific nature of the objection before it makes a ruling. (107 Ill. 2d R. 239(b).) In the instant case defense counsel failed to advise the court of his specific objection. In fact, his objections were clearly an afterthought, as the court had moved on to a discussion of plaintiff's instruction No. 18 before counsel interrupted and requested the court reporter to record that his objections to instruction No. 17 were that the instruction was not an IPI instruction and that it was argumentative. Clearly, defendants did not properly preserve their objections for review.

■■■ In their fifth contention defendants maintain that it was error for the trial court to permit plaintiff's counsel to use a poster board blowup of plaintiff's instruction No. 17 during counsel's closing argument because it stressed the importance of that one instruction above all others.

In permitting the use of the enlarged instruction, the court explained to counsel for the defendants that it is permissible for counsel to read portions of instructions, if not too lengthy, during closing arguments to emphasize that portion of the case which counsel considered important to his client's case. The court expressed its belief that the same purpose was accomplished through the use of the enlarged instruction.

While we consider the use of the enlarged instruction to be erroneous as unduly emphasizing instruction No. 17, that use was not sufficiently prejudicial to constitute reversible error. Prior to giving the jury its instructions, the trial court reminded the jury that the closing arguments of counsel were not evidence. In instructing the jury, the trial court gave defendants' instruction No. 1 (Illinois Pattern Jury Instructions, Civil, No. 1.01 (2d ed. 1971)), which instructed the jurors to consider all of the instructions as a whole, not picking out any one instruction and disregarding others. We note further that the court did not permit the enlarged instruction to go to the jury during its deliberation. At oral argument, neither counsel could advise this court as to how long the enlarged instruction had been before the jury, and the record is silent on this aspect.

The evidence showed that the plaintiff had preexisting problems with her left knee and that defendants' negligence resulted in aggravation of these problems. It was not improper, therefore, for plaintiff's counsel to point out in his closing argument that plaintiff's

right to damages should not be limited or denied because her injury resulted from an aggravation of a preexisting condition. In telling the jury that the instant case was largely about a preexisting condition, counsel for plaintiff merely pointed to the enlarged instruction; he did not dwell on it or even read it to the jury. Consequently, we do not find that the use of the enlarged instruction during plaintiff's closing argument prejudiced the defendants' case.

 The defendants next argue that the trial court erred in refusing to submit to the jury defendants' special interrogatories No. 37 and No. 38.

Special interrogatory No. 37 asked:

"Was the negligence of the defendants, ST. CHARLES MALL ASSOCIATES, LTD., and ST. CHARLES MALL, INC., the proximate cause of the injuries sustained by the plaintiff?"

Special interrogatory No. 38 asked:

"Were the defendants, ST. CHARLES MALL ASSOCIATES, LTD. and ST. CHARLES MALL, INC., negligent?"

At the conference on instructions, counsel for plaintiff argued that the interrogatories should not be given to the jury. Counsel maintained that, based on the evidence, it would clearly be error for the jury to answer "no" to either interrogatory since there was no question that defendants were negligent and that their negligence was the proximate cause for at least some of the injuries. The court agreed, stating that the testimony showed that some of plaintiff's injury was attributable to the defendants' negligence and that, therefore, it would not give either interrogatory. Defendants raised no objection to the court's ruling refusing the interrogatories, and, therefore, they have waived this question for review. (*Ellerman v. Clark Products, Inc.* (1978), 67 Ill. App. 3d 848, 856.) Moreover, that they agree that they waived this issue is further evidenced by defendants' failure to respond, in their reply brief, to plaintiff's challenge of waiver.

 In their last contention defendants argue that the jury's verdict in the amount of $83,666 was excessive and not within the limits of fair and reasonable comprehension since plaintiff's medical bills totaled only $8,666. Defendants' argument, however, completely ignores that medical bills are not conclusive as to the appropriate size of a jury verdict. (*Ludgin v. John Hancock Mutual Life Insurance Co.* (1986), 145 Ill. App. 3d 703, 710.) Moreover, in determining an award of damages in a personal injury case, other factors besides a plaintiff's medical expenses are to be considered. Among those factors are the permanency and extent of injury, possible future deterio-

ration, and restrictions on daily activity because of the injury. *Mathieu v. Venture Stores, Inc.* (1986), 144 Ill. App. 3d 783, 800.

It is fundamental that the amount of damages to be awarded in a personal injury case is a matter largely left to the discretion of the jury. (*Diaz v. Chicago Transit Authority* (1988), 174 Ill. App. 3d 396, 407.) The test for an excessive verdict is whether the amount awarded falls within the necessary flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 359.)

In the instant case, the evidence to be considered by the jury showed that before the 1985 accident plaintiff had undergone prior surgeries to her left knee as well as having had extensive therapy to rehabilitate the knee but that her knee worked well, allowing her to do normal household chores and to maintain an active social life. The fracture suffered by plaintiff in 1985 split the two halves of the kneecap by about one inch. The surgery to repair the kneecap included the insertion of metal traction devices to pull the two sections together. In 1986, plaintiff had to undergo a second surgery to remove these devices from her knee; both surgeries required extensive rehabilitation.

Plaintiff's treating physician testified that plaintiff's knee would not get better but would deteriorate over time. Plaintiff testified that two or three times per week she experienced swelling in her left knee and that she is almost in constant pain. Additionally, both plaintiff and her husband related that plaintiff can no longer do normal household chores, such as vacuuming and climbing the stairs to do laundry, nor can she grocery shop alone.

Based on the evidence, the amount the jury awarded as damages fell well within the limits of fair and reasonable compensation and will not be set aside.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

LINDBERG, P.J., and REINHARD, J., concur.