1999 UT App 080

**Allyson STEVENETT, Plaintiff, Appellee, and Cross-appellant,**

v.

**WAL–MART STORES, INC., a corporation dba Sam's Club, Defendant, Appellant, and Cross-appellee.**

No. 981013–CA.

Court of Appeals of Utah.

March 18, 1999.

Robert G. Gilchrist and Bastiaan K. Coebergh, Richards, Brandt, Miller & Nelson, Salt Lake City, for Appellant.

G. Eric Nielson, Bertch & Birch, Salt Lake City, for Appellee.

Before WILKINS, P.J., and BENCH and JACKSON, JJ.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Defendant Wal–Mart Stores Inc. appeals from a final judgment amending a jury verdict in favor of plaintiff Allyson Stevenett arising from a personal injury action. Wal–Mart claims that the trial court made erroneous rulings regarding the admissibility of certain evidence and the award of costs to plaintiff which warrant reversal for a new trial. In addition, plaintiff cross-appeals, arguing that the court improperly reduced the jury's award of special damages. We affirm.

## BACKGROUND

¶ 2 We recite the facts in a light most favorable to the jury's verdict. Plaintiff was injured while jogging through defendant's parking lot when she tripped and fell over a metal rod protruding from a cart rack. After the incident, plaintiff sought medical attention from a chiropractor, and later from Dr. Howard Reichman, a neurosurgeon. Dr. Reichman tried to alleviate plaintiff's symptoms by removing two herniated disks from her spine and performing two thoracic outlet surgeries. Plaintiff later brought a personal injury action against defendant for her injuries.

¶ 3 Eight months before trial, defendant notified plaintiff of its intent to call Dr. A. Creig MacArthur as an expert witness. Less than three weeks later, plaintiff underwent an independent medical examination (IME) by Dr. MacArthur. Dr. MacArthur prepared his IME report and a supplemental report the same day. The reports omitted any opinion regarding the cause of plaintiff's injuries. However, in his deposition three days before trial, Dr. MacArthur testified in detail about his IME report, and added his opinion that there was only a one-percent chance that plaintiff's fall in the parking lot could have caused her cervical and thoracic injuries. The deposition was taken immediately before trial as a result of Dr. MacArthur's unwillingness to be deposed earlier, as requested by plaintiff.

¶ 4 One day before trial, plaintiff presented a motion in limine seeking to exclude Dr. MacArthur's opinion regarding the cause of her injuries on three grounds: First, that Dr. MacArthur failed to provide a detailed conclusion as to causation in his IME report in violation of Utah Rule of Civil Procedure 35. Second, that Wal–Mart failed to supplement interrogatories regarding affirmative defenses in violation of Utah Rule of Civil Procedure 26. Third, that the revelation of this previously unknown opinion was a violation of Utah Rule of Evidence 403's prohibitions against unfair surprise. The court agreed in "all respects," ruling that defendant could not use any of Dr. MacArthur's testimony as to causation to rebut the testimony of plaintiff's expert, Dr. Reichman. Despite this

ruling, however, Dr. MacArthur testified at trial that in his opinion plaintiff's fall was not the type of fall which could cause a whiplash injury of the type sustained by plaintiff.

¶ 5 On the third day of trial, plaintiff's counsel recalled plaintiff as a witness and tried to introduce four medical bills totaling $10,551.81, which plaintiff had not provided to defendant before trial. Over defendant's objections for lack of foundation and unfair surprise, the court admitted these additional medical expenses through plaintiff's testimony.

¶ 6 At the end of trial, plaintiff requested past special damages in the amount of $85,-184.51. The jury returned a verdict exceeding this amount, awarding plaintiff $93,000 in past special damages. On July 8, 1997, the court entered its judgment reflecting $93,000. Nine days later, defendant submitted Motions to Alter or Amend the Judgment (pursuant to Utah Rule of Civil Procedure 59(e)) and to obtain Relief from Judgment (pursuant to Utah Rule of Civil Procedure 60(b)) based upon a mathematical mistake in the verdict. Following this, the court remitted the award of past special damage from $93,-000 to $84,184.51 based upon insufficient evidence under Utah Rule of Civil Procedure 59(a)(6) and (e). Thereafter, plaintiff filed a motion for costs totaling $10,244.60. The court awarded plaintiff $2,663.40 of that request.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 On appeal, Wal–Mart raises three claims of error: First, that the trial court erred in limiting the testimony of Dr. MacArthur. Second, that the trial court erroneously admitted the four previously undisclosed medical bills into evidence. Third, that the trial court erred in awarding some of the claimed costs to plaintiff. In addition, Stevenett cross-appeals, challenging the court's remittitur of her special damages award.

¶ 8 Two standards of review exist for reviewing questions regarding the admissibility of evidence. *See Utah Dep't of Transp. v. 6200 South Assocs.*, 872 P.2d 462, 465 (Utah Ct.App.1994). "With respect to the trial court's selection, interpretation, and

application of a particular rule of evidence [or procedure], we apply a correction of error standard. When the rule ... requires the trial court to balance specified factors to determine admissibility, 'abuse of discretion or reasonability is the appropriate standard.' " *Id.* (citation omitted); *see also Stevensen v. Goodson*, 924 P.2d 339, 347 (Utah 1996) (stating trial court "is allowed considerable ... discretion in the admissibility of expert testimony, and in the absence of a clear showing of abuse, this court will not reverse"). However, "even where error is found, reversal is appropriate only in those cases where, after review of all of the evidence presented at trial, it appears that 'absent the error, there is a reasonable likelihood that a different result would have been reached.' " *Utah Dep't of Transp.*, 872 P.2d at 465 (citation omitted). Moreover, the person asserting error has the burden to show not only that the error occurred but also that it was substantial and prejudicial. *See Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987).

¶ 9 Whether an exhibit should have been excluded on the basis that it lacked adequate foundation is primarily within the sound discretion of the trial court, which ruling we will not overturn absent an abuse of discretion. *See Klinger v. Kightly*, 889 P.2d 1372, 1376 (Utah Ct.App.1995); *see also Erdmann v. Thomas*, 446 N.W.2d 245, 246 (N.D.1989).

¶ 10 A court's award of costs is also within its sound discretion which ruling we will not disturb absent an abuse of discretion. *See Morgan v. Morgan*, 795 P.2d 684, 686 (Utah Ct.App.1990).

¶ 11 We review a court's decision to remit a damages award based upon insufficiency of evidence under Utah Rule of Civil Procedure 59 for an abuse of discretion. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 803–04 (Utah 1991).

## ANALYSIS

I. *Exclusion of Expert Witness Testimony*

¶ 12 We turn first to the court's exclusion of Dr. MacArthur's testimony regarding his opinion as to the cause of Stevenett's inju-

ries. Specifically, the court limited the doctor's testimony as a sanction for Wal–Mart's violation of Rules 35 and 26 of the Utah Rules of Civil Procedure as well as to protect Stevenett from unfair surprise.

## A. Rule 35

¶ 13 We first examine whether the trial court erred in excluding Dr. MacArthur's testimony under Rule 35. *See* Utah R. Civ. P. 35(b). Rule 35(b), which addresses the right of a party to receive a written report of a medical examination ordered by the court or upon agreement of the parties to be performed on the party, provides:

(1) If requested by ... the person examined, the party causing the [physical] examination to be made shall deliver to the person examined ... a copy of a detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnosis and conclusions.... The court on motion may order delivery of a report on such terms as are just, *and if an examiner fails or refuses to make a report the court may exclude the examiner's testimony if offered at the trial.*

. . . .

(3) This subdivision applies to examinations made by *agreement of the parties*, unless the agreement expressly provides otherwise.

Utah R. Civ. P. 35(b)(1), (3) (emphasis added).

¶ 14 Wal–Mart argues that the only situation under Rule 35 in which the court could exclude Dr. MacArthur's testimony is if the court, upon motion by Stevenett, ordered Dr. MacArthur to produce the report and he failed or refused to do so. As a result, Wal–Mart argues, because no order and motion existed, exclusion was inappropriate.

¶ 15 In construing this procedural rule, we recognize Utah lacks guiding precedent. As such, we look to federal and state court decisions that interpret substantially similar rules. *See State v. Parker,* 936 P.2d 1118, 1120 (Utah Ct.App.1997) (providing when Utah rule is essentially similar to the federal rule of procedure, we look to "the abundance of federal experience in the area for guidance"); *see also* Fed.R.Civ.P. 35(b)(1).

¶ 16 In *Simpson v. Heiderich,* 4 Ariz.App. 232, 419 P.2d 362 (1966), the Arizona Court of Appeals applied a literal interpretation to a nearly identical procedural rule. The court stated that

The *only instance* in which exclusion of medical testimony is authorized is when the doctor himself failed or refused to make such [a] report after being ordered by the court to do so.... [T]he court's discretion to exclude the testimony could be exercised *only after* (1) refusal of the examining party to deliver the report, (2) motion and notice, (3) an order requiring delivery and (4) the physician's failure or refusal to comply....

*Id.* at 366 (emphasis added).

¶ 17 The United States Supreme Court has accorded Federal Rule of Civil Procedure 35 broad and liberal treatment. *See Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 240–41, 13 L.Ed.2d 152 (1964) (stating that, as with any discovery rule, we should interpret Rule 35 broadly). Other courts have followed. In *Salvatore v. American Cyanamid Co.,* 94 F.R.D. 156 (D.R.I.1982), the court articulated two instances under Federal Rule of Civil Procedure 35(b)(1) when exclusion of expert testimony was warranted: (1) "if a doctor simply refuses to prepare a report ....; and (2) if the examining party requests the examined party to supply his [or her] own physicians' reports, the examined party may not be able to obtain them [or the] physician may not have prepared [the] report." *Id.* at 158. In this situation, by the time the request for the report is made, it may be too late to prepare it. The court proceeded to hold that while exclusion of the physician's testimony would be warranted in these situations, these examples are merely illustrative and "are *not all inclusive.*" *Id.* (emphasis added).

¶ 18 Similarly, in *Kerns v. Consolidated Rail Corp.,* 90 F.R.D. 134, 138 (E.D.Pa.1981), the court liberally construed Rule 35. It stated that

Failure to comply with the terms of this Rule may, in the discretion of the judge, result in the exclusion of medical testimo-

ny.... The judge may *also* refuse to permit the testimony of any medical witness who has not made a written report of his examination *in time* for it to be exchanged....

*Id.* (emphasis added).

¶ 19 In *Castillo v. Clark,* 881 S.W.2d 627, 631 n. 9 (Mo.1994), the Missouri Supreme Court noted its disagreement with the Arizona court's reasoning in *Simpson,* yet still held that a trial court is free to impose "a lesser, or no sanction" when a doctor fails to make such a report.

¶ 20 In *Soderquist v. St. Charles Mall Assocs.,* 177 Ill.App.3d 207, 127 Ill.Dec. 74, 532 N.E.2d 903, 908 (1988), the Illinois Court of Appeals found no error by the trial court in limiting an expert witness's testimony, under a similar procedural rule, to the IME report the doctor prepared. The court reasoned that the exclusion of testimony was prompted out of fairness to both parties because the IME report was the only information the plaintiff had regarding the subject matter of the doctor's testimony. *See id.*

■ ¶ 21 We choose to broadly interpret Rule 35. In doing so, we hold that while Rule 35 clearly permits a court to sanction a party for a physician's outright failure or refusal to make an IME report when the party made a motion and the court ordered the physician to do so, exclusion of such testimony under Rule 35 is not limited to this situation. However, we do not read Rule 35 so broadly as to permit a court to sanction a party by totally excluding or limiting an examiner's testimony, for the examiner's failure to express detailed conclusions as to the cause of the examinee's injuries as in this instance. Even a broad reading of the rule does not suggest such a result. Those cases that have liberally interpreted this rule hold that exclusion is permissible when a physician fails, refuses, or *untimely* presents an IME report. We are not presented with such a situation. Accordingly, the court erred in excluding Dr. MacArthur's testimony under Rule 35 because it did not have discretion under this provision to make such a ruling.

### B. Rules 26 and 37

¶ 22 Next, we examine whether the trial court had discretion to limit Dr. MacArthur's testimony under Rule 26, and if so, whether it exceeded the permitted range of that discretion. Utah Rule of Civil Procedure 26 provides:

(b)(4) *Trial preparation: experts.* Discovery of facts known and opinions held by experts, ... may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

. . . .

(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, *except* as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, *the subject matter on which he is expected to testify, and the substance of his [or her] testimony.*

Utah R. Civ. P. 26 (emphasis added).

■ ¶ 23 Coextensive with this rule is Utah Rule of Civil Procedure 37, which empowers the court to sanction a party for various discovery violations. *See Berrett v. Denver & Rio Grande W. R.R. Co.,* 830 P.2d 291, 294 (Utah Ct.App.1992) (stating "trial court's power to sanction a party for failure to cooperate in discovery comes from rule 37(b)(2) ... which provides that if a party fails to obey an order entered under rule 26(f), the court may prohibit the offending party from introducing certain matters into evidence," such as witness testimony). Rule 37 provides in relevant part:

(b)(2) If a party ... fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders ... as are just [including]: (B) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him [or her] from introducing designated matters into evidence.

Utah R. Civ. P. 37(b)(2). Moreover, "[b]efore a trial court can impose discovery sanctions under Rule 37, the court must find on the part of the noncomplying party willfulness, bad faith, ... fault, ... or 'persistent dilatory tactics frustrating the judicial process.'" *Morton v. Continental Baking Co.,* 938 P.2d 271, 274 (Utah 1997) (citations omitted).

▮ ¶ 24 Here, the court ruled that defendant's failure to supplement interrogatories regarding affirmative defenses violated Rule 26, which omission warranted limiting Dr. MacArthur's testimony. The trial court reasoned that the apparent impossibility that the fall could have produced plaintiff's injuries was properly an affirmative defense. We agree with the trial court's ruling, although we note that the power for such a discovery sanction is found in Rule 37. In this case, the court entered a scheduling order, under Rule 26(f), requiring that all discovery responses be completed by December 2, 1996.[1] Moreover, it is undisputed that plaintiff's interrogatories asked defendant to articulate its affirmative defenses, which defendant acknowledges it failed to supplement as required by Rule 26. Moreover, the court "faulted" defendant for not providing Dr. MacArthur's causation opinion sooner than it did.[2] Following this, because defendant vio-

lated the scheduling order requiring it to provide this information and because the court found "fault," the necessary prerequisites were met under Rule 37(b)(2) to impose sanctions. Accordingly, because the court properly balanced the nature of the sanction with defendant's failure to supplement, and imposed a sanction not only well within its power but also carefully and narrowly crafted to address the violation, we hold that the court did not abuse its discretion in limiting defendant's witness's testimony on the issue of causation.

▮ ¶ 25 In addition, we note that the court also had the authority to sanction defendant under Utah Rule of Civil Procedure 37(d). This rule provides in relevant part:

(d) If a party ... fails ... (2) to serve answers [or gives an incomplete answer as indicated in rule 37(a)(3) ] ... to interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under [37(b)(2)(B) ]....

Utah R. Civ. P. 37(d).

¶ 26 Here, the court was well within its right to sanction defendant under Rule 37(d) by limiting Dr. MacArthur's testimony because it failed to give a complete answer in its interrogatories regarding the affirmative defenses it would assert. As such, we can also affirm on this ground, even though it was not relied upon below. *See Bill Nay & Sons Excavating v. Neeley Constr. Co.,* 677 P.2d 1120, 1123 (Utah 1984) (indicating than an appeals court can affirm on any proper ground).

1.  Wal–Mart argues that under Utah Rule of Civil Procedure 37, the court did not have the authority to sanction it by excluding Dr. MacArthur's testimony because no order creating a judicially imposed deadline existed. This is simply incorrect. As stated above, a scheduling order existed stating "all discovery *including responses* must be completed by December 2, 1996." (Emphasis added). Because defendant failed to comply with the court's discovery order, the court was well within its right to sanction defendant under Rule 37(b)(2).

2.  Defendant concedes the court's finding of fault when it states in its brief that "the trial court apparently did fault Wal–Mart for not providing

Dr. MacArthur's causation opinion to plaintiff sooner than three days prior to trial." In any event, the court reproved defendant by stating

I'm going to grant the motion in limine ... in all three respects. I just—on the basis that the Court feels that proximate cause is always an issue, cannot be deemed a rebuttable issue, [it is] a critical issue. It's an element of their case. And if your IME doctor had had an opinion that there was no causation [then] that should have been included in his report and they should have been advised about it sooner than three days prior to trial, which is my understanding when you first learned of it.

¶ 27 Because the trial court acted within its discretion in limiting Dr. MacArthur's testimony under Rules 26 and 37, we need not reach the court's apparent reliance on unfair surprise.

## II. *Admission of Medical Bills*

¶ 28 Wal–Mart contends that the trial court erroneously admitted into evidence four medical bills totaling $10,511.81. Specifically, it argues that there was insufficient foundation to justify the admission and that the admission constituted unfair surprise to Wal–Mart because Stevenett failed to submit the bills before trial. We address these issues in turn.

¶ 29 Citing cases from several jurisdictions, Wal–Mart argues that there is a foundational requirement for the admission of medical expenses which must be laid either by the parties by stipulation (as to the amount of medical bills plaintiff may claim), *or* by plaintiff's demonstration that the medical bills were reasonable and necessarily incurred. Following this, Wal–Mart complains that Stevenett failed to produce evidence that the expenses were reasonable and should have called plaintiff's physician or, in the least, an insurance representative to testify that these expenses were reasonable and necessary.

¶ 30 The trial court agreed that plaintiff must meet one of these foundational prerequisites before plaintiff could admit the medical bills, stating that, absent a stipulation by the parties, a medical bill may only be presented with foundation that treatments were necessitated by the injuries arising from the incident and that the charges were reasonable. Moreover, the court proceeded to say that "a proper foundation can be laid if [plaintiff can] show that the[ ] bills were received [by Stevenett], and ... if [plaintiff] can show that they were paid [by her insurance]."

¶ 31 We agree with the trial court's ruling and find no abuse of discretion in admitting the evidence. In doing so, we follow those jurisdictions that require a party to properly lay a foundation before introducing a medical bill into evidence. *See, e.g.,*

*Fink v. Foley–Belsaw,* 983 F.2d 111, 115 (8th Cir.1993); *Carmack v. Bi–State Dev. Agency,* 731 S.W.2d 518, 520 (Mo.Ct.App.1987); *Erdmann v. Thomas,* 446 N.W.2d 245, 246 (N.D. 1989); *Home Indem. Co. v. Eason,* 635 S.W.2d 593, 595 (Tex.Ct.App.1982). These courts require the claimant to show both the necessity of the expense and the reasonableness of the fee charged. *See Fink,* 983 F.2d at 115; *Home Indem.,* 635 S.W.2d at 595. We also agree that the payment of medical expenses "is some evidence of both necessity and reasonableness." *Fink,* 983 F.2d at 115. However, we decline to adopt defendant's position that plaintiff was *required* to call her physician or insurance representative to testify that the medical bills were paid in order to demonstrate the charges were reasonable and necessary. Although a physician or insurance representative's testimony may be offered to show that the bills were necessitated by the accident and were reasonable, such testimony is not required. *See Erdmann,* 446 N.W.2d at 246–47; *Klein v. Harper,* 186 N.W.2d 426, 431–32 (N.D.1971) (sufficient foundation to admit into evidence the plaintiff's medical bills without supporting medical testimony); *Munro v. Privratsky,* 209 N.W.2d 745, 753 (N.D.1973); *Merlino v. Beecroft Chevrolet Co.,* 488 A.2d 695, 695 (R.I.1985) (physician's testimony may provide adequate foundation by testifying charges were reasonable and services were necessary; other independent witnesses unnecessary).

¶ 32 Plaintiff testified that the proffered bills were for medical expenses arising from the injuries received in the parking lot mishap, were forwarded for payment to her insurance company, and were paid without objection by the insurance company. We hold that this testimony was sufficient to lay a foundation for the admitting plaintiff's medical bills. *See Erdmann,* 446 N.W.2d at 247 (holding that plaintiff's testimony that pharmacy bill was for medicine received from pharmacy which was prescribed by his doctor for injuries he received as a result of the collision was sufficient foundation evidence). Concluding the court did not abuse its discretion, we affirm the trial court's admission of the proffered evidence.

¶ 33 Defendant further maintains that the court abused its discretion in admitting the bills because defendant was unfairly surprised. Specifically, it argues that because the additional medical expenses were never submitted to it before trial, this amounts to unfair surprise. Because defendant fails to cite adequate authority for this proposition, and fails to indicate where in the record it preserved this issue, we decline to address it on appeal. *See* Utah R.App. P. 24(a), (i); *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988).

### III. *Costs*

¶ 34 Defendant also challenges the trial court's award of costs in the amount of $2,663.40 to the plaintiff. Defendant maintains that only $563.90 in costs is supported by the evidence.

¶ 35 Defendant contests the trial court's award of $375.00 in mediation expenses to plaintiff, arguing that these expenses are not in the nature of costs. We have previously distinguished legitimate and taxable "costs" from other "litigation expenses." *See Morgan v. Morgan*, 795 P.2d 684, 687 (Utah Ct.App.1990). Costs are recoverable; litigation expenses, while seemingly necessary, are not. *See id.* Thus, the issue before us is whether the expenses incurred from the parties' unsuccessful court-ordered mediation are properly taxable as costs or are nonrecoverable litigation expenses.

¶ 36 In civil litigation, an award of costs is governed by Utah Rule of Civil Procedure 54(d)(1), which provides that

Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

When no statute governs a particular item of expense, the allowance or disallowance of a particular item as a cost falls within the sound discretion of the trial court. *See* 20 Am.Jur.2d *Costs* § 46 (1995) (stating when rule or statute fails to enumerate specific recoverable items as a cost, the allowance or disallowance of the expenses as a cost falls primarily within the discretion of the trial court); *see also Frampton v. Wilson*, 605 P.2d 771, 773–74 (Utah 1980); *Edward W. Gillen Co. v. Hartford Underwriters Ins. Co.*, 166 F.R.D. 25, 27 (E.D.Wis.1996) (holding power to award costs under Rule 54 is within the sound discretion of the trial court).

¶ 37 We are unaware of any Utah law addressing whether expenses incurred from court-ordered mediation are taxable costs. Other jurisdictions addressing similar issues have all held that a court has discretion to award costs incurred from mediation to a prevailing party. *See Martineau v. City of Concord, New Hampshire*, No. 93–268–M, 1994 U.S. Dist. Lexis 15801, at *11–12, 1994 WL 587832, at *4 (D.N.H. Oct. 24, 1994) (awarding prevailing party costs expended in connection with mediation efforts); *Gibson v. Bobroff*, 49 Cal.App.4th 1202, 57 Cal.Rptr.2d 235, 239 (1996) (holding court has discretion to award necessary expenses incurred from unsuccessful court-ordered mediation to prevailing party); *Ledbetter v. Todd*, 418 So.2d 1116, 1117 (Fla.Dist.Ct.App.1982) (holding trial court erred in refusing to award plaintiff costs incurred from mandatory medical mediation); *Orlando Reg'l Med. Ctr., Inc. v. Chmielewski*, 573 So.2d 876, 882 (Fla.Dist.Ct. App.1990) (refusing to grant mediation costs, although reasonable costs and expenses for statutorily required mediation were available, because parties failed to establish they were required to submit to mediation under any statute or court rule).

¶ 38 We agree with these courts that it is good public policy to encourage exploration of alternative dispute resolution methods by allowing the prevailing party to recover costs so incurred. Without such a rule, parties may well be disinclined to seriously explore these avenues, even when ordered to do so by the court, as in this case. Moreover, imposing costs upon a party who refuses to settle and who thereafter loses at trial, operates as an incentive to seriously consider the possibilities of settling the dispute and avoiding the risks of a trial.

¶ 39 Defendant has failed to present any evidence persuading us that the trial court abused its discretion in awarding mediation expenses to plaintiff. At most, defen-

dant argues that the court erred in awarding mediation expenses because such expenses are not statutorily authorized costs. This argument misses the mark. In many cases we have allowed the taxing of costs despite the fact that no statute specifically authorized such costs (e.g. deposition costs). In fact, Rule 54(d)(1) addresses those situations where certain expenses are not statutorily authorized but may still be recoverable as costs. *See* Utah R. Civ. P. 54(d)(1). Because defendant has not convinced us that the expenses incurred during mediation were unreasonable or were not "necessarily incurred," *see* Utah R. Civ. P. 54(d)(2) (requiring party seeking costs to show that disbursements were necessarily incurred); *see also Gibson*, 57 Cal.Rptr.2d at 238–39 (stating court can award costs not specifically prohibited so long as they are reasonably necessary to litigation rather than merely convenient or beneficial to its preparation), we hold that the court did not exceed its permitted range of discretion in making such an award. We have reviewed defendant's other allegations concerning costs and find insufficient bases to reverse the trial court on these issues.

## IV. *Remittitur*

¶ 40 On cross-appeal, plaintiff argues that the trial court abused its discretion in remitting her past special damages award because defendant untimely submitted its Rule 59 and Rule 60 motions. *See* Utah R. Civ. P. 59 and 60. Relying on Utah R. Civ. P. 47(r) [3] and cases interpreting that rule, plaintiff argues that defendant's objection to the remittitur was untimely because it waited until after the jury was discharged to object to the verdict. We find no merit in this argument.

¶ 41 While Rule 47 speaks of a court's authority to correct an informal or insufficient verdict (also known as an "irregular verdict"), Stevenett's reliance on this rule is misplaced. *See* Utah R. Civ. P. 47(r). In this case, the court authorized the remittitur under Rule 59(a)(6), for insufficient evidence to support the verdict, not Rule 47(r). An informal or insufficient verdict under Rule 47(r) relates to the form of the verdict, not the sufficiency of the evidence supporting it, and the issue here is insufficiency in that there was no evidence, as Stevenett admits, to support the award greater than $85,184.51, not that the verdict was irregular in form. By contrast, Rule 59(a) empowers a court to remit an award based upon "[i]nsufficiency of the evidence" when a party serves a motion to amend "not later than 10 days after entry of the judgment." Utah R. Civ. P. 59(a)(6) and (e); *see also Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 802 (Utah 1991) (losing party may challenge award by moving for remittitur under rule 59(a)). Here, defendant timely submitted its motion to amend the damages award nine days after the judgment. Moreover, plaintiff *stipulated* at the motion hearing that the $93,000 award was not supported by the evidence. Accordingly, the court was well within its discretion in remitting the award.

## CONCLUSION

¶ 42 We conclude that the trial court properly limited Dr. MacArthur's testimony as a discovery sanction under Rules 26 and 37 of the Utah Rules of Civil Procedure, and properly admitted plaintiff's medical bills into evidence. Moreover, the trial court acted within its discretion in awarding plaintiff costs and remitting plaintiff's award of special damages.

¶ 43 Affirmed.

¶ 44 WE CONCUR: RUSSELL W. BENCH, Judge, and NORMAN H. JACKSON, Judge.

---

3. Utah Rule of Civil Procedure 47(r) provides: "If the verdict rendered is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be sent out again." *Id.*