2001 UT App 117

UTCO ASSOCIATES, LTD., a Utah limited partnership, by and through its general partner, Robert D. Kent, Plaintiff and Appellant,

v.

K. Demarr ZIMMERMAN; Sumerset Houseboats, Div. SMI; James E. Sharpe; and John Does 1–10, Defendants and Appellees.

No. 20000339–CA.

Court of Appeals of Utah.

April 12, 2001.

J. Mark Gibb and Jeffrey M. Jones, Durham, Jones & Pinegar, Salt Lake City, for Appellants.

Blake S. Atkin and Jonathan Hawkins, Atkin & Lilja, Salt Lake City, for Appellees.

Before Judges GREENWOOD, BILLINGS, and THORNE.

## OPINION

BILLINGS, Judge:

¶1 UTCO Associates, Ltd. (UTCO), appeals from a judgment entered in favor of Sumerset Houseboats, Div. SMI and James E. Sharpe (collectively, Sumerset). Specifically, UTCO appeals dismissal of its promissory estoppel claim and the trial court's exclusion of evidence. We affirm.

## BACKGROUND

¶2 Sumerset is a Kentucky corporation engaged in manufacturing and selling houseboats. James E. Sharpe was, at all relevant times, the president of Sumerset. In early 1991, Defendant K. Demarr Zimmerman started a business, Lake Powell–N–Houseboats, whereby he would purchase houseboats and then sell weekly shares in the boats to individuals.

¶3 On November 20, 1992, Zimmerman contacted Sumerset regarding the purchase of a 1993 model-year houseboat (Houseboat or Zimmerman Houseboat). To finance his purchase of the Houseboat, Zimmerman contacted UTCO seeking $75,000 to be paid toward the $120,000 purchase price of the Houseboat. UTCO had previously financed Zimmerman's purchase of houseboats from Sumerset.

¶4 On December 1, 1992, pursuant to their prior course of dealing, Sharpe sent the original Manufacturer's Statement of Origin (MSO) and a copy of the invoice describing the Houseboat, as well as wiring instructions, to UTCO's legal counsel, Bruce Nelson. UTCO agreed to loan Zimmerman $60,000 for the purchase of the Houseboat, and on December 21, 1992, Zimmerman executed a promissory note (Note) in favor of UTCO for $60,000. To secure the Note, Zimmerman executed a security agreement in favor of UTCO. The security agreement described the Houseboat, as well as two motors and a generator.

¶5 Thereafter, Nelson had a telephone conversation with Sharpe during which Nelson confirmed that "UTCO had made the loan, that [Zimmerman] had signed the documents, and that [UTCO] was prepared to wire $60,000 to fund the loan." Sharpe represented to Nelson that the funds would pay the outstanding portion of the purchase price necessary for Sumerset to ship the Houseboat to Zimmerman. At the time of this conversation, the Houseboat described in the MSO and invoice did not exist. Sumerset admitted there was never a boat with the dimensions and features described in the invoice it had sent to Nelson. On December 29, 1992, UTCO wired $58,384 to Sumerset. The transfer provided the amount was to be applied to the "Demarr Zimmerman Account," but did not indicate that it be applied to any particular boat.

¶6 Subsequently, Zimmerman informed Sumerset not to ship the Houseboat because he would be unable to pay for it. Zimmerman canceled his purchase of the Houseboat and instructed Sumerset to apply the $58,384 loan from UTCO to another boat. Sumerset complied and took the Houseboat out of production. Approximately three months later, Sumerset "reassigned" the serial number stated on the MSO and invoice sent to Nelson to a different boat which was sold to an unrelated third party. UTCO was not in-

formed about the cancellation or subsequent change of serial numbers.

¶ 7 Zimmerman later defaulted on the Note. On July 21, 1993, UTCO filed suit against Zimmerman, Sumerset, and Sharpe, alleging promissory estoppel, breach of contract, negligent misrepresentation, and fraud.[1] On October 6, 1993, Zimmerman filed a Chapter 7 petition for bankruptcy relief in the United States Bankruptcy Court for the District of Utah. The petition stayed UTCO's causes of action against Zimmerman in state court.

¶ 8 Prior to trial, Sumerset filed a motion in limine seeking exclusion of evidence that it reassigned the serial number designated for the Zimmerman Houseboat to another boat. This motion was granted. UTCO's claims against Sumerset and Sharpe were tried to a jury. Before instructing the jury at the close of the evidence, the trial court dismissed UTCO's cause of action for promissory estoppel. At this time, UTCO was pursuing Zimmerman in the bankruptcy proceedings and had filed a nondischargeability action in those proceedings.

¶ 9 The jury returned a verdict in favor of Sumerset and Sharpe on UTCO's breach of contract, fraud, and negligent misrepresentation claims. On September 4, 1996, the trial court entered a judgment dismissing UTCO's claims against Sumerset and Sharpe. The trial court did not dismiss the claims against Zimmerman because of Zimmerman's petition in bankruptcy. UTCO appealed. The appeal was dismissed by this court on April 30, 1998, because no final order had been entered by the trial court.

¶ 10 On March 24, 1998, UTCO and Zimmerman entered into a stipulation for nondischargeability of debts in the bankruptcy proceeding. Zimmerman acknowledged his debt to UTCO under the Note in the amount of $66,000 plus interest, totaling $81,209.26, and a judgment was entered against him for that amount. UTCO stipulated and agreed to accept from Zimmerman $7,000 of the outstanding judgment in full satisfaction of the same. On December 3, 1999, a full satisfac-

tion of judgment was entered discharging Zimmerman from his debt to UTCO.

¶ 11 UTCO then filed a motion to certify the September 4, 1996 judgment pursuant to Rule 54(b) of the Utah Rules of Civil Procedure. The trial court certified the judgment on March 22, 2000. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 12 Three issues are presented on appeal. First, whether the trial court properly certified its order under Rule 54(b) of the Utah Rules of Civil Procedure. Whether an order is eligible for certification under Rule 54(b) is a question of law which we review for correctness. *See Kennecott Corp. v. Utah State Tax Comm'n,* 814 P.2d 1099, 1100 (Utah 1991).

■ ¶ 13 Second, whether the trial court erred by refusing to instruct the jury on UTCO's promissory estoppel claim. Whether the trial court erred by refusing to give a proposed jury instruction is a question of law. *See Cornia v. Wilcox,* 898 P.2d 1379, 1386 (Utah 1995). "Therefore, we grant no particular deference to the trial court's rulings." *Id.*

■ ¶ 14 Third, whether the trial court erred in excluding evidence that Sharpe reassigned the serial number on the Zimmerman Houseboat to another boat. " 'With respect to the trial court's selection, interpretation, and application of a particular rule of evidence [or procedure], we apply a correction of error standard.' " *Stevenett v. Wal–Mart Stores, Inc.,* 1999 UT App 80, ¶ 8, 977 P.2d 508 (alteration in original) (quoting *Utah Dep't of Transp. v. 6200 S. Assocs.,* 872 P.2d 462, 465 (Utah Ct.App.1994)). "However, even where error is found, reversal is appropriate only in those cases where, after review of all of the evidence presented at trial, it appears that absent the error, there is a reasonable likelihood that a different result would have been reached." *Id.* (internal quotations omitted) (citation omitted).

---

1. During the course of trial, UTCO voluntarily dismissed its claims for quantum meruit, breach of covenant of good faith and fair dealing, fore-closure of security interest, conspiracy, and conversion.

## ANALYSIS

### I. RULE 54(b) CERTIFICATION

¶ 15 Sumerset argues that Rule 54(b) [2] certification was improper because it claims there is significant factual overlap between the claims against Sumerset which were certified on appeal, and the claims against Zimmerman, which Sumerset asserts remain before the trial court. *See Kennecott*, 814 P.2d at 1104–05.

¶ 16 In its certification order, the trial court stated that "[UTCO] does not have any claims remaining against Zimmerman.... Because of Zimmerman's discharge [in bankruptcy, UTCO] may no longer pursue Zimmerman in this action." While not explicitly dismissing Zimmerman from this action, the trial court makes clear that no claims are currently pending against Zimmerman because of his discharge in bankruptcy. Thus, Zimmerman has, de facto, been dismissed from this action.

¶ 17 In sum, there are no remaining legally enforceable claims against Zimmerman in the trial court, and the trial court certified that there is no just reason for delay of this appeal. Therefore, Rule 54(b) certification was proper.

### II. PROMISSORY ESTOPPEL CLAIM

¶ 18 UTCO argues the trial court erred by dismissing UTCO's cause of action for promissory estoppel and refusing to instruct the jury on the claim.

¶ 19 Promissory estoppel is an equitable doctrine.[3] *See Tolboe Constr. Co. v. Staker Paving & Constr. Co.*, 682 P.2d 843, 845 (Utah 1984); *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct.App. 1993). In general, the law will not imply an equitable remedy when there is an adequate remedy at law. *See American Towers Owners Ass'n Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996).

¶ 20 At the time the trial court dismissed the promissory estoppel claim, UTCO had legal contract claims as a creditor in Zimmerman's bankruptcy pending in the United States Bankruptcy Court. Sumerset argues the trial court was therefore correct in dismissing UTCO's promissory estoppel claim because UTCO failed to exhaust its legal claims against Zimmerman in bankruptcy court and thus was barred from pursuing its equitable claims in this case.

¶ 21 *Knight v. Post*, 748 P.2d 1097 (Utah Ct.App.1988), is squarely on point with the situation that occurred in the instant case.[4] In *Knight*, the plaintiff orally contracted with a corporation to furnish labor and materials to insulate an oil tank battery and erect two buildings at the corporation's oil well site. *See id.* at 1098. The plaintiff completed the work and submitted an invoice for $18,437.13 to the corporation. *See id.* at 1098–99. The corporation did not pay the plaintiff. *See id.* at 1099. The plaintiff attempted to place a mechanics' lien on the oil well property, but incorrectly described the property on the lien. *See id.* Subsequently, the corporation filed for bankruptcy. *See id.* The plaintiff filed a creditor's claim against the corpora-

---

2. Rule 54(b) of the Utah Rules of Civil Procedure provides, in relevant part:

    [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination by the court that there is no just reason for delay and upon an express direction for the entry of judgment.

    Utah R. Civ. P. 54(b).

3. UTCO sought monetary damages under its promissory estoppel claim. While it is generally true that actions in equity seek non-monetary relief (e.g., injunction, specific performance), we note that the distinction between actions in law and equity is based on the nature of the action

and not the form of relief. *See S.P.C.S., Inc. v. Lockheed Shipbuilding & Const. Co.*, 29 Wash. App. 930, 631 P.2d 999, 1001 (1981). "Thus, even if the action is one for money damages, it may be primarily equitable in nature." *Id.* (citation omitted).

4. Sumerset also relies on *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773 (Utah 1977). However, *Commercial Fixtures* is distinguishable from the instant case because the plaintiff in *Commercial Fixtures* brought action *only* upon the equitable theory of unjust enrichment "without any attempt to exhaust *any* legal remedies available." *Id.* at 774 (emphasis added). In the instant case, UTCO was pursuing several legal claims against both Zimmerman and Sumerset.

tion in the bankruptcy proceedings, seeking payment of the entire amount due. *See id.* The plaintiff then learned that while the corporation operated the well, it had no ownership interest in the same, and that it was actually an individual, George Post, who had an ownership interest in the well. *See id.* The plaintiff sought payment of the $18,437.13 invoice from Post, who refused to pay. *See id.* The plaintiff then filed suit against Post to recover the sum due under the equitable theory of quantum meruit and amended his still-pending bankruptcy claim against the corporation, seeking only the sums he could not recover from Post. *See id.* The plaintiff prevailed in his suit against Post on the equitable theory of quantum meruit. *See id.* Post appealed. *See id.*

¶ 22 This court reversed, holding that the plaintiff could not recover under quantum meruit because he had failed to exhaust his legal remedies. *See id.* at 1099–1100. We stated, "As a general rule, one must first exhaust his legal remedies before he may recover on the basis of the equitable doctrine of quantum meruit." *Id.* at 1099 (citations omitted). The legal remedies available to the plaintiff included "pursuit of the corporation's assets as a creditor in the corporation's bankruptcy proceeding." *Id.* We reasoned the plaintiff did not exhaust his legal remedy in bankruptcy because he

> did not pursue his claim in bankruptcy to its end to attempt to recover from corporate assets, but brought this action during the pendency of the bankruptcy action. Neither did he submit evidence to the lower court that pursuit of the bankruptcy claim would, in all likelihood, be fruitless.

*Id., Knight* is consistent with authority from other jurisdictions.

¶ 23 In *Maloney v. Therm Alum Industries, Corp.*, 636 So.2d 767 (Fla.Dist.Ct.App. 1994), *overruled in part on other grounds by Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So.2d 383 (Fla. Dist.Ct.App.1997) (en banc), the plaintiff landowner entered into a contract with a contractor for the construction of an office building. *See id.* at 768. The contractor entered into a sub-contract with a subcontractor to furnish and install glass walls,

windows, and doors. *See id.* Because of delays in construction and alleged defects in some of the glass, the landowner refused to make final payment under the contract. *See id.* Both the contractor and subcontractor filed liens against the building and litigation followed. *See id.* Among other claims and counter-claims, the subcontractor brought a claim of quantum meruit against the landowner and sought damages for breach of contract against the contractor. *See id.* The subcontractor and contractor then agreed to voluntarily dismiss their claims against one another and submit to arbitration. *See id.* The jury awarded monetary damages to the subcontractor on its quantum meruit claim against the landowner. *See id.* The landowner appealed. *See id.*

¶ 24 Among the issues on appeal, the court considered "the propriety of the award of damages to the subcontractor based on a theory of quantum meruit." *Id.* at 769. The court noted that the only direct contractual relationship was between the subcontractor and contractor, not subcontractor and landowner. *See id.* The court reasoned, under the contract, "the subcontractor was entitled to receive payment from the contractor" for work performed. *Id.*

> If the contractor had made payment in full, then obviously the [landowner] would not have been "unjustly" enriched. The problem is that we do not know (because the record does not disclose) whether the contractor will be required to fully compensate the subcontractor. We know only that the claim is being or has been submitted to arbitration. Under circumstances such as here where the subcontractor has not exhausted his direct remedy against the contractor, it is premature and therefore improper to permit the subcontractor to pursue an indirect equity claim against the [landowner].

*Id.*

¶ 25 The facts in the instant case are similar to *Maloney.* The contract was between UTCO and Zimmerman, not UTCO and Sumerset. Zimmerman was legally obligated to pay under the Note, and had he paid UTCO in full on his obligation, UTCO would have no claim in promissory estoppel against

Sumerset. As in *Maloney*, the problem is that at the time the trial court dismissed the promissory estoppel claim, UTCO was pursuing Zimmerman in bankruptcy and there was no evidence presented as to whether Zimmerman would be required to fully compensate UTCO. Thus, allowing the promissory estoppel claim to go forward would have been premature.

¶ 26 Under *Knight*, before UTCO could pursue its equitable promissory estoppel claim against Sumerset and Sharpe, it was required to either pursue its claim in bankruptcy against Zimmerman to conclusion, or submit evidence to the trial court that pursuit of Zimmerman in bankruptcy would have been fruitless. *See Knight*, 748 P.2d at 1099. It is undisputed that, at the time the trial court determined that it would not instruct the jury on promissory estoppel, UTCO had not pursued its legal claims against Zimmerman in bankruptcy to an end.

¶ 27 Thus, we look to the record to determine whether there was evidence that it would have been fruitless to pursue Zimmerman in bankruptcy. The sole evidence introduced at trial relevant to whether or not it would be fruitless for UTCO to pursue Zimmerman in bankruptcy was the testimony of Zimmerman's bankruptcy attorney, Scott C. Pierce. Pierce testified that UTCO had filed a claim as an unsecured creditor in Zimmerman's Chapter 7 bankruptcy proceeding, that at this point, no creditors had been paid, but that there were substantial assets in the estate and as such, unsecured creditors such as UTCO would receive a share of those assets. While Pierce testified that approximately $220,000 had been paid into the bankruptcy estate, he stated, "I do not believe there is any way to accurately predict the percentage [UTCO would receive]."

¶ 28 Thus, there was no evidence introduced at trial to show that pursuit of Zimmerman in bankruptcy would have been fruitless. The evidence simply shows that, like *Maloney*, it was uncertain how much UTCO would receive. From a policy and procedural standpoint, it is preferable to require a plaintiff to make this showing rather

than allowing the equitable claim to be tried to completion. Otherwise, the trial court would be in the unenviable position of having to await the outcome of the bankruptcy proceeding before determining what, if anything, to award the plaintiff under a successful claim in equity.

¶ 29 In sum, we cannot say the trial court erred in dismissing UTCO's equitable claim of promissory estoppel before submitting the case to the jury.[5]

## III. EXCLUSION OF EVIDENCE

■ ¶ 30 UTCO finally argues that the trial court erred in excluding evidence that Sharpe reassigned the serial number on the Zimmerman Houseboat to another boat. The trial court concluded:

> The fact that the boat with a serial number did not exist, and was never built to the specifications in the original invoice, is all the plaintiff needs in that regard.... That doesn't mean you can't put in evidence that there never was a boat with that serial number, or that was the serial number on the invoices and there is no such boat, but ... I don't see any relevance to the fact that the serial number now appears on some other boat.

¶ 31 UTCO cites numerous authorities for the proposition that, in a fraud action, all the surrounding circumstances, including statutory violations, must be viewed to assess fraudulent intent. Thus, UTCO asserts it "was entitled to show that Sharpe reassigned the serial numbers to hide their fraud." Even assuming it was error to exclude this evidence, UTCO must show that absent the error there is a reasonable likelihood that a different result would have been reached. *See Stevenett v. Wal–Mart Stores Inc.*, 1999 UT App 80, ¶ 8, 977 P.2d 508.

¶ 32 The record shows that evidence was admitted establishing that the Houseboat matching the MSO and invoice sent to UTCO was never constructed and did not even exist when Sharpe received the $58,384 from UTCO and made the promise to ship the

---

5. In light of our holding, we do not reach the other issues raised on appeal regarding the trial court's dismissal of the promissory estoppel claim.

Houseboat. Moreover, evidence was admitted that a boat with the serial number appearing on the MSO and invoice sent to UTCO was sold to an unrelated third party. Despite this evidence, the jury returned a verdict in favor of Sumerset and Sharpe.

¶ 33 We are not persuaded that admission of the evidence would have resulted in a *different outcome. See id.* The jury was not persuaded by evidence showing, in essence, that Sumerset made promises with respect to and accepted money for a boat that did not exist, then sold a boat possessing the serial number designated for the Zimmerman Houseboat to someone else. Given this evidence, we do not believe there is a reasonable likelihood that admission of evidence showing that Sumerset actually reassigned the Zimmerman Houseboat serial number to another boat, more than three months after the alleged misrepresentation, would have been enough to persuade the jury to find in favor of UTCO. Thus, even assuming exclu-sion of the evidence was in error, we are not persuaded that it was harmful error.

## CONCLUSION

¶ 34 We conclude that Rule 54(b) certification was proper, that the trial court was correct in dismissing UTCO's promissory estoppel claim, and that the trial court did not commit harmful error in excluding evidence that the Zimmerman Houseboat serial number was reassigned. Accordingly, we affirm.

¶ 35 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, WILLIAM A. THORNE, JR., Judge.